UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DONALD KOCZUR,

    Plaintiff,

    v.

ROCK ISLAND RESOURCE COMPANY, INC., JOHN D. ZIMMERMAN, SUZETTA M. ZIMMERMAN, LAKESIDE LAUNDRY, LAKESIDE CLEANERS, LAKESIDE ONE-HOUR CLEANERS,

    Defendants.

Case No. 3:21-CV-646 JD

**OPINION AND ORDER**

Now before the Court is a Joint Motion to Bar Contribution Claims brought by Plaintiff Donald Koczur ("Koczur") and Defendants the Estate of Robert D. Wagoner ("Wagoner"), John D. Zimmerman and Suzetta M. Zimmerman ("the Zimmermans"), and Rock Island Resource Company, Inc. ("Rock Island").[1] (DE 26.) Defendants Lakeside Cleaners, Lakeside Laundry, and Lakeside One-Hour Cleaners are not parties to this motion and have not appeared in this action. The motion is brought pursuant to settlements reached between Plaintiff and the Settling Defendants. (DE 26-1; DE 26-2.) The Court now GRANTS the motion to bar contribution claims, finding that the Settlement Agreements are fair, reasonable, and consistent with the objectives of CERCLA.

---

[1] The Court will refer to Wagoner, Zimmerman, and Rock Island collectively as the "Settling Defendants." The Settling Defendants, alongside Mr. Koczur, will be referred to as the "Settling Parties."

A.      **Factual Background**

In 2011, Plaintiff Donald Koczur purchased property located at 811 East Ninth Street, Rochester, Indiana (the "Site"). (DE 1 ¶ 20.) Then, in April of 2014, the Indiana Department of Environmental Management ("IDEM") sent Koczur a notice indicating that there had been a release of hazardous substances at the Site and that Koczur might be liable for response actions and costs pursuant to Indiana Code 13-25-4-5 and § 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA). (*Id.* ¶ 22.) In response to IDEM's demands, Koczur then investigated what caused the contamination and ultimately found that a plume of chlorinate volatile organic compounds (cVOCs) had migrated into the groundwater and offsite to the north. (*Id.* ¶¶ 23–25.) In 2018, Koczur submitted a Correction Action Plan to IDEM, which included a plan to remediate the contamination. (*Id.* ¶ 27.) After approval from IDEM, Koczur undertook various remediation efforts in 2019 and 2020. (*Id.* ¶¶ 29, 30.)

On August 31, 2021, Koczur filed this action against multiple previous owners and operators of the Site, including Rock Island (who owned the Site from 1957 to 1978), the dry cleaner operating on the Site at some time between 1957 to 1978 (going by the names "Lakeside Laundry," "Lakeside Cleaners," and "Lakeside One-Hour Cleaners"), Wagoner (who owned the site from 1978 until 1998), and the Zimmermans (who purchased the site in 1998). (DE 1 ¶¶ 9–19.) The Complaint alleges that these Defendants each stored, located, and used "hazardous substances" at the Site. (*Id.* ¶ 37.) Koczur seeks recovery of the reasonable costs for the remedial actions taken to address the release of hazardous substances under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601 et seq., as amended by the Superfund Amendments and Reauthorization Act of

1986, Pub. L. No. 99-499, 100 Stat. 1613, and Section 2 of Indiana's Environmental Legal Action Statute (ELA), Ind. Code § 13-30-9-2. Koczur also seeks a declaratory judgment that the Defendants are and will be liable for past and future costs, damages, and fees necessary to address and respond to the hazardous substances at the Site.

On November 22, 2021, Defendant Rock Island filed its answer, as well as a counterclaim against Koczur and crossclaims against Wagoner, the Zimmermans, Lakeside Laundry, Lakeside Cleaners, and the Lakeside One-Hour Cleaners. (DE 16 at 15.) Rock Island's counterclaim against Koczur asks the Court to allocate response costs equitably among liable parties pursuant to section 113 of CERCLA and for Koczur to be held responsible for its share of the response costs. Similarly, as to Rock Island's codefendants, Rock Island asks the Court to allocate response costs equitably among liable parties pursuant to section 113 of CERCLA to the extent the codefendants are responsible for the response costs. (*Id.* at 17.)

On March 15, 2022, Koczur and Defendants Wagoner, the Zimmermans, and Rock Island (the "Settling Defendants") filed a joint motion to bar contribution claims. (DE 26.) This motion indicates that Koczur and the Settling Defendants entered into two settlement agreements, which are attached in Exhibits 1 and 2. (*Id.* at 2.) In one agreement, Wagoner and the Zimmermans agree to collectively pay Koczur $300,000 in exchange for a release from "any and all liability" with respect to all environmental claims arising out of the hazardous materials existing on the Site as of the date the agreement was entered. (DE 26-1 at 4, 7.) In a separate settlement agreement, Rock Island agrees to pay Koczur $280,000 in exchange for a release from "any and all liability" with respect to any actions or inactions occurring prior to the execution of the settlement agreement. (DE 26-2 at 6.) However, no settlement agreement was reached with

3

Defendants Lakeside Laundry, Lakeside Cleaners, and Lakeside One-Hour Cleaners, who have not yet appeared in this action.

On February 2, 2023, this Court ordered the Settling Parties to file further information explaining why granting a motion to bar contribution claims would be substantively fair given that certain non-settling parties have not appeared. (DE 27.) Pursuant to this order, the Settling Parties filed a statement and further exhibits. With this supplemental statement now filed, the Court again considers the Settling Parties motion to bar contribution claims. (DE 26.)

**B.    Legal Standard**

Under section 107(a) of CERCLA, a private party who has incurred cleanup costs consistent with a national contingency plan is permitted to seek cost recovery against four categories of persons: (1) present owners and operators of facilities that accepted hazardous substances, (2) past owners and operators of such facilities, (3) generators of hazardous substances, and (4) certain transporters of hazardous substances. 42 U.S.C. § 9607(a); *see also United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 139 (2007) (explaining that "§ 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs"). The typical claim brought by a private party under section 107(a) is by an innocent "landowner forced to clean up hazardous materials that a third party spilled onto its property or that migrated there from adjacent lands." *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994); *see also Metro. Water Reclamation Dist. of Greater Chi. v. N. Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824, 829 (7th Cir. 2007) (explaining that an innocent landowner which "had not been the subject of either governmental or private compulsion to initiate cleanup" and "undertook cleanup on its own . . . maintaining that it shared no actual responsibility for the site" could bring a suit under section 107(a)). If a claim is brought by a

4

proper party and defendants are liable under section 107(a), liability "is strict, joint and several," and costs may be recovered in full from a responsible party "regardless of that party's relative fault." *Metro. Water Reclamation Dist. of Greater Chi.*, 473 F.3d at 827.

A wholly distinct cause of action exists under section 113(f)(1) of CERCLA. *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 163 n.3 (2004) (explaining that the "cost recovery remedy of § 107(a)(4)(B)" and the "contribution remedy of § 113(f)(1) are similar at a general level in that they both allow private parties to recoup costs from other private parties . . . [b]ut the two remedies are clearly distinct"). In order to correct the inequitable distribution of liability, which can occur as a result of strict liability under section 107(a) failing to take account of relative fault, section 113(f)(1) allows for "any person [to] seek contribution from any other person who is liable or potentially liable [for response costs] under" section 107(a) of CERCLA . 42 U.S.C. § 9613(f)(1); *see also Metro. Water Reclamation Dist. of Greater Chi.*, 473 F.3d at 828 (explaining that section 113(f)(1) of CERCLA codified the judicially recognized "right of contribution for [potentially responsible parties] who had been sued under section 107(a) and, because of that provision's joint-liability scheme, had been ordered to pay more than their pro rata share of the cleanup costs"). A claim for contribution under section 113(f)(1) may be brought either "during or following any civil action" under section 107(a). 42 U.S.C. § 9613(f)(1). Unlike an action under section 107(a), liability under section 113(f)(1) is not joint and several. Rather, in suits brought under section 113(f)(1), the court "allocates costs using equitable principles." *Metro. Water Reclamation Dist. of Greater Chi.*, 473 F.3d at 828.

While section 113(f)(2) encourages parties to settle with the United States or a State by insulating any party that settles with the United States or a State from being sued in a contribution action, 42 U.S.C. § 9613(f)(2), there is no corresponding statutory text addressing

5

bars on contribution claims following settlements between private parties. *See United States v. SCA Servs. of Indiana, Inc.*, 827 F. Supp. 526, 531 (N.D. Ind. 1993) ("[T]he text of CERCLA is silent as to whether claims for contribution are barred when private parties settle with other parties."). However, because CERCLA has a policy of favoring settlement, a court may bar non-settlors from bringing suits seeking contribution against settling private parties. *See id.* (approving settlement prior to granting bar on contribution claims); *Evansville Greenway & Remediation Tr. v. S. Ind. Gas & Elec. Co.*, No. 3:07-CV-66, 2010 WL 3781565, at *3 (S.D. Ind. Sept. 20, 2010) (same); *Gary Int'l Airport Authority v. Honeywell Int'l Inc.*, No. 2:17-CV-95, 2021 WL 5094846, at *1 (N.D. Ind. Oct. 4, 2021) (same); *Cooper Drum Cooperating Parties Grp. v. Am. Polymers Corp.*, No. CV1903007, 2020 WL 2504331, at *3 (C.D. Cal. May 13, 2020) ("[F]ederal courts may approve settlements and enter bar orders that discharge all claims of contribution by non-settling defendants.").

When determining whether to bar future contribution claims, the Court must consider the same factors it would consider when approving a settlement: (1) whether the settlement is fair and adequate; (2) whether the settlement is reasonable; and (3) whether the settlement is consistent and faithful to the objectives of CERCLA. *Evansville Greenway & Remediation Tr.*, No. 3:07-CV-66, 2010 WL 3781565, at *1 (footnote in original); *Von Duprin LLC v. Moran Elec. Serv., Inc.*, No. 1:16-CV-01942-TWP-MG, 2022 WL 18358919, at *2 (S.D. Ind. Dec. 21, 2022) (noting that when determining whether to enter an order barring future contribution claims "the Court should consider the same factors that are relevant to a decision whether to approve a CERCLA settlement in which the federal government or a state is involved"). "The approval of settlements in the CERCLA context is 'committed to the trial court's informed discretion.'"

*Evansville Greenway & Remediation Tr.*, No. 3:07-CV-66, 2010 WL 3781565, at *1 (footnote in original) (quoting *SCA Servs. of Indiana, Inc.*, 827 F. Supp. at 532).

**C.     Discussion**

*(1)     Fairness*

Fairness in the CERCLA settlement context has both procedural and substantive components. *Evansville Greenway & Remediation Tr.*, No. 3:07-CV-66, 2010 WL 3781565, at *1. Based on the substance of the settlement agreements, the procedure in which these settlements took place, and the representations made in the supplemental statement, the Court finds that the Settling Parties have now demonstrated that the settlements are procedurally and substantively fair.

 "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance.'" *Evansville Greenway & Remediation Tr.*, No. 3:07-CV-66, 2010 WL 3781565, at *1 (quoting *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 86(1st Cir. 1990)). Here, an affidavit submitted by counsel for Koczur, Mr. Thao Nguyen, represented that the Settling Parties negotiated these settlements after months of arms-length negotiations, going back and forth with their negotiations until the parties were able to reach a compromise. (DE 30-1 ¶ 8.)

Procedural fairness also usually requires putting a non-settling party on notice of the settlement. *See United States v. IMC E. Corp.*, No. 18-CV-3818(GRB)(ARL), 2022 WL 4134321, at *4 (E.D.N.Y. Sept. 12, 2022) (finding that there was procedural fairness because "[t]he objecting defendants were put on notice [of the] settlement negotiations" pursuant to a letter filed by the settling parties). However, in this circumstance notice to the Non-Settling Defendants appears impossible. The Plaintiffs conducted a thorough search to serve the non-

7

settling entities: Lakeside Laundry, Lakeside Cleaners, and Lakeside One-Hour Cleaners. According to the affidavit from one of Koczur's counsel, Mr. Ryan Leagre, the parties searched through the Secretary of State's website, but the website did not identify principals, addresses, or potential successor entities. (DE 30-2.) After examining historical city directories, Mr. Leagre was able to identify that the owner of these three entities was Lester Utterback. (*Id.*) However, according to online obituaries, Mr. Utterback died nearly 38 years ago, and his wife, Patricia Utterback, died approximately ten years ago. (*Id.*) Mr. Leagre therefore asserts that he has no way to notify the non-settling three entities of the lawsuit or the motion for contribution bar. From Mr. Leagre's affidavit, it is clear that the Settling Parties have made a diligent effort to find a successor to the non-settling parties, but have been unsuccessful. Accordingly, notice appears impossible and the Court finds that the settlements are procedurally fair.

Furthermore, the Court finds that the terms of the agreement are substantively fair. "Substantive fairness requires that the settlement terms 'be based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each [potentially responsible party] has done.'" *Evansville Greenway & Remediation Tr.*, No. 3:07-CV-66-SEB-WGH, 2010 WL 3781565, at *2 (quoting *Cannons Eng'g*, 899 F.2d at 86).

Here, the terms of the agreement are substantively fair. As the Court explained in its prior order, there are "occasions where the allocation [of liability] is fair by virtue of a plaintiff's inability to bring a claim against any other non-settling potentially responsible parties." (DE 27.); *see also Lusher Site Remediation Grp. v. HMS Elkhart, LLC*, No. 3:18-CV-506, 2021 WL 5356105, at *4 (N.D. Ind. Nov. 16, 2021) (finding that a settlement was substantively fair because the statute of limitations had run on the relevant claims for any defendant outside of the

settling defendants, and the settlement and motion to bar only pertained to those claims, so no other party would have to seek "contribution from [the settling defendants] after paying more than their proportionate share because no other party [would] have to contribute *anything* for [those claims]"). Through their affidavits, Plaintiffs have shown that they diligently searched for potential successor entities or principals of the three non-settling entities, but were unsuccessful. Given this diligent search, it appears that the settlements allocate liability among all potentially liable parties. Furthermore, the Settling Parties explain the settlements together correspond to roughly 25% of the cost of the investigation and remediation work at the site. (DE 30 at 9.) The Settling Parties indicate that they believe that this amount is fair given the uncertainty of the litigation and the fact that "there are no available records or witnesses clearly proving their liability." (*Id.*) Because it appears that Plaintiffs will likely be unable to bring a viable claim against any non-settling party, and because counsel factored in the relative lack of strong evidence clearly proving liability of the defendants in coming to their settlements, it appears that the settling parties have allocated responsibility in a rational and substantively fair manner.

### *(2)    Reasonableness*

The Court also finds that the settlements are reasonable. In evaluating reasonableness, the Court considers the foreseeable litigation risks and transaction costs associated with litigation. *Evansville Greenway & Remediation Tr.*, No. 3:07-CV-66, 2010 WL 3781565, at *3. The Court also considers the "likely efficaciousness [of the settlement] as a vehicle for cleansing the environment; the extent to which it satisfactorily compensates the public for actual and anticipated costs of remedial and response measures; and the relative strength of the parties' litigating positions." *United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 910 (E.D. Wis. 2004) (citing *Cannons Eng'g Corp.*, 899 F.2d at 89).

Considering these factors, the Court believes that the settlements are reasonable and in the public interest. The settlements provide for more timely reimbursement of remediation costs, which assists the public by apportioning harm to the responsible party. *Evansville Greenway & Remediation Tr.*, No. 3:07-CV-66, 2010 WL 3781565, at *3 ("The settlement is clearly in the public interest because the funds the Settling Parties have agreed to pay will be material in helping to effectuate a more timely restoration of the River Yard and/or reimbursement for remediation costs at the Main Yard and appear to be proportional to the harm allegedly caused by the parties."); *see also SCA Servs. of Indiana, Inc.*, 827 F. Supp. at 533 ("These settlements are clearly in the public interest as they achieve early resolution of the apportionment of the remediation costs as between the settling parties, and as they will foster a more timely restoration of the site.")

Additionally, the settlements will save the parties substantial transaction costs. Rather than expending substantial funds by going to trial, the Settling Parties have saved costs by settling in a timely manner. In the CERCLA context, this type of efficiency is highly encouraged. *See SCA Servs. of Indiana, Inc.*, 827 F. Supp. at 533 ("The proposed settlement is in accordance with CERCLA law, and is likewise consistent with CERCLA's purpose of remediating hazardous waste sites as efficiently as practical.").

### (3)     *Purposes of CERCLA*

Lastly, the Court believes that the settlements are in line with the purposes of CERCLA. Congress enacted CERCLA for two purposes: (1) to "establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites" and (2) "to shift the costs of cleanup to the parties responsible for the contamination." *Metro. Water Reclamation Dist. of Greater Chicago v. N.*

*Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824, 827 (7th Cir. 2007) (citing *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996)).

The Court believes that the settlements further these purposes. As discussed above, the settlements reduce litigation expenses and transaction costs. This helps to preserve funds to be used in a manner that furthers the goals of CERCLA. *See Evansville Greenway & Remediation Tr.*, No. 3:07-CV-66, 2010 WL 3781565, at *4 ("The Settlement Agreement has significantly reduced excessive litigation expenses and transaction costs by eliminating continued litigation between the Settling Parties, thereby preserving those funds to be used in a manner that furthers the goals of CERCLA."). Additionally, the amount of funds provided by the Settling Defendants in the settlements will help reapportion liability from Koczur to include other potentially responsible parties, which serves one of the main purposes of CERCLA.

### IV.   Conclusion

For the reasons explained above, the Court **APPROVES** the settlement agreements, as they are fair, reasonable, and consistent with the objectives of CERCLA. (DE 26-1; DE 26-2.) Furthermore, the Court **GRANTS** Plaintiff Koczur and the Settling Defendants' Motion to Bar Contribution Claims. (DE 26.)

Accordingly, all contribution claims against the Settling Defendants arising out of or in connection with the action by IDEM against Koczur for environmental contamination at 811 East Ninth Street, Rochester, Indiana, are hereafter barred.

SO ORDERED.

ENTERED: March 10, 2023

                                                  /s/ JON E. DEGUILIO
                                                  Chief Judge
                                                  United States District Court